WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Franklin and Amy Khedouri, husband and wife,<br><br>    Plaintiffs/Counterdefendants,<br><br>vs.<br><br>Shell Holdings, Inc., a Delaware corporation,<br><br>    Defendant/Counterclaimant. | No. CV-09-315-PHX-DGC<br><br>**ORDER** |

    Plaintiff Franklin Khedouri, a former employee of Defendant Shell Holdings, Inc., filed suit against Defendant in January 2009. Dkt. #1-1. The amended complaint brought by Khedouri and his wife asserts claims for breach of contract and unpaid wages. Dkt. #46. Defendant asserts a breach of contract counterclaim. Dkt. #53.

    The parties have filed motions for summary judgment. Dkt. ##62, 64. The motions are fully briefed. Dkt. ##67, 69, 71, 72. For reasons that follow, Plaintiffs' motion will be granted and Defendant's motion will be granted in part and denied in part.[1]

---

[1] Plaintiffs have not requested oral argument. Defendant's request is denied because the parties have fully briefed the issues and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. Background.

Franklin Khedouri worked for Defendant's corporate parent, Shell Vacations, from October 1992 until July 1999. A dispute arose about the amount Khedouri was owed in bonus compensation. The issue was resolved pursuant to a settlement agreement executed in November 2001. That agreement forms the basis for Defendant's counterclaim. *See* Dkt. #53.

Khedouri returned to Shell, this time as an employee of Defendant Shell Holdings, on May 1, 2004. He was terminated on November 20, 2008. His annual base salary at the time purportedly was $220,000. Plaintiffs claim that Defendant owes them (1) $12,750 in unpaid wages earned from April 1, 2008 through termination (the difference between an annual salary of $200,000 and $220,000), (2) one month's salary, or $18,333, in lieu of a 30-day notice of termination, (3) six months' severance pay totaling $110,000, and (4) up to $80,000 in profit bonus compensation. Dkt. #46 ¶ 21(a)-(d). Defendant asserts in its counterclaim that Plaintiffs' claim for severance pay constitutes a breach of the 2001 settlement agreement. Dkt. #53 ¶¶ 17-19.

Defendant seeks summary judgment on all claims asserted by Plaintiffs. Dkt. #64. Each side seeks summary judgment on the counterclaim. Dkt. ##62, 64.

## II. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1  **III.   Plaintiffs' Breach of Contract Claim (Count One).**

The breach of contract claim asserted in count one of the amended complaint is based on several alleged written and oral contracts. The Court will address each alleged contract below. Following the parties' lead (Dkt. ##65 at 12, 67 at 8), the Court will apply Arizona law to the breach of contract claim.

It is well-established under Arizona law "that before a binding contract is formed, the parties must mutually consent to all material terms." *Hill-Shafer P'ship v. Chilson Family Trust*, 799 P.2d 810, 814 (Ariz. 1990). Mutual assent "is ascertained from 'objective evidence, not from hidden intent of the parties.'" *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 132 P.3d 825, 828 (Ariz. 2006) (quoting *Hill-Shafer*, 799 P.2d at 815). "Objective evidence includes written and spoken words as well as acts." *Id.*

**A.   The Alleged Contract for a $20,000 Raise.**

When Khedouri was promoted from vice president to president of Defendant's franchise business, Shells Vacation Systems, in December 2007, his annual base salary was increased from $180,000 to $200,000. That $200,000 figure was used by Defendant to calculate the compensation owed Khedouri upon termination in November 2008.

In March 2008, Shell President Tracy Sherles asked Khedouri to take on an additional role as director of special projects for which he would receive a $20,000 raise effective April 1, 2008. Khedouri agreed and began work on special projects. Khedouri claims that Defendant has breached the oral agreement promising him a $20,000 raise. Dkt. #46 ¶¶ 11-12, 21(a).

Defendant asserts that the raise was contingent on Khedouri signing a written employment agreement. Dkt. #65 at 7. Summary judgment is appropriate, Defendant contends, because Khedouri refused to sign the employment agreement presented to him in September 2008 and has pointed to no other contract providing for a $20,000 raise. Dkt. #72 at 9. Plaintiffs argue that there are triable issues as to whether the raise was contingent upon Khedouri signing a written employment agreement and that an oral contract reasonably may be inferred from the evidence. The Court agrees.

1    Defendant cites Sherle's deposition testimony for the proposition that Khedouri would
2    receive the $20,000 raise only "if he entered into an employment agreement that contained,
3    among other things, a non-compete provision." Dkt. #66 ¶ 35. Sherles testified not that the
4    raise was contingent upon an executed employment agreement, but that Khedouri could not
5    get the raise "until someone at Shell drafted some document showing his new job
6    responsibilities[.]" Dkt. #66-2 at 95. This was important, Sherles explained, because unlike
7    Khedouri's promotion from vice president to president of Shell Vacation Systems in
8    December 2007, which was a title change only, the job description for director of special
9    projects was "significantly different[.]" *Id.* Sherles made a similar statement in May 2008.
10   When Khedouri inquired as to why his paycheck did not include the raise, Sherles responded:
11   "It won't until we finish the deal which includes *the job description*. It will be retroactive."
12   Dkt. #68-16 at 2 (emphasis added). Defendant has not, as a matter of undisputed fact, shown
13   that Khedouri was entitled to the raise only after he signed a written employment agreement.

14   The objective evidence, that is, the words and actions of the parties, *see Johnson*, 132
15   P.3d at 828, reasonably can be construed as showing a mutual assent to the $20,000 raise.
16   Sherles assigned Khedouri the additional role of director of special projects and Khedouri
17   performed that role. The parties' "intention," according to Sherles, was that "doing both the
18   Shell Vacation Systems and director of special projects, was to include a pay raise" from
19   $200,000 to $220,000. Dkt. #66-2 at 95. Khedouri has testified that Sherles placed no
20   conditions on the $20,000 raise when she assigned him the role of director of special projects.
21   Dkt. #68-1 at 5, ¶¶ 16-17. While Sherles has testified that Khedouri could not get the raise
22   until some document was drafted "showing his new job responsibilities" (Dkt. #66-2 at 95),
23   the written employment agreement presented to Khedouri in September 2008 includes a job
24   description for the director of special projects position (Dkt. #66-3 at 21-24). That agreement
25   further provides that "[e]ffective April 1, 2008, [Khedouri's] annual base gross compensation
26   will be $220,000.00." Dkt. #66-3 at 25.

27   A jury reasonably could conclude that Defendant assented to paying Khedouri the
28   promised $20,000 raise when Defendant drafted the employment agreement showing his new

- 4 -

job responsibilities. Dkt. #66-2 at 95. Even if the parties anticipated executing a formal written employment agreement, "that fact alone does not preclude as a matter of law a jury finding that an oral contract was made." *AROK Constr. Co. v. Indian Constr. Servs.*, 848 P.2d 870, 878 (Ariz. Ct. App. 1993); *see also Demasse v. ITT Corp.*, 984 P.2d 1138, 1142-43 (Ariz. 1999) ("At-will employment contracts are unilateral and typically start with an employer's offer of a wage in exchange for work performed; subsequent performance by the employee provides consideration to create the contract."). Defendant's summary judgment motion will be denied with respect to the alleged oral contract for a $20,000 raise. *See* Dkt. #46 ¶ 21(a).

### B. The Alleged Contract for 30 Days' Pay In Lieu of Termination Notice.

Khedouri was terminated without notice. Plaintiffs assert that 30 days' pay in lieu of notice is "a standard employee benefit for Shell executives." Dkt. #67 at 11. The only evidence cited in support of this assertion is the testimony of Shell executive Daniel Glickstein. *Id.*; Dkt. #68 ¶ 83. Defendant notes, correctly (Dkt. #73 ¶ 83), that Glickstein testified only that *his* "particular employment agreement" has a provision for 30 days' notice before termination. Dkt. #68-27 at 3. Plaintiffs cite the 2004 memorandum of understanding (Dkt. #68-9) and the 2006 amendment to that agreement (Dkt. #68-10), but Khedouri has admitted that those documents contain no notice of termination provision (Dkt. #66-1 at 52-53).

As the parties asserting the existence of a contract, Plaintiffs bear the burden of proof. *See Tabler v. Indus. Comm'n of Ariz.*, 47 P.3d 1156, 1159 (Ariz. Ct. App. 2002). Plaintiffs have presented no evidence from which a jury reasonably could infer the existence of a contract, oral or written, providing Khedouri with 30 days' pay in lieu of notice. Defendant's summary judgment motion will be granted with respect to this claim. *See* Dkt. #46 ¶ 21(b).

### C. The Alleged Contract for Six Months' Severance Pay.

Plaintiffs claim that they are entitled to six months' severance pay. Dkt. #46 ¶ 21(c). Khedouri repeatedly testified at his deposition that this claim is based on an agreement he made with Sherles in October 2008. Dkt. #66-1 at 12-13, 19-20, 38, 50. In response to

1  Defendant's summary judgment motion, Plaintiffs assert that the claim for severance pay is
2  based not on the purported agreement of October 2008, but exclusively upon a 2004 oral
3  agreement between Khedouri and Shell Chairman Sheldon Ginsburg. Khedouri has
4  presented affidavit testimony that in or around May of 2004, Ginsburg agreed that
5  Khedouri's prior employment with Shell (from 1992-99) would be credited for the purpose
6  of calculating benefits. Dkt. #68-1 at 3, ¶ 7. Plaintiffs do not provide facts surrounding the
7  purported agreement, that is, the specific date and place of the agreement and what was
8  actually said by whom. Ginsburg has testified that he was not involved in the re-hiring of
9  Khedouri and has no recollection of any discussions with Khedouri concerning his
10 employment in 2004. Dkt. #68-25 at 4.

11 In order for there to be a binding contract between Khedouri and Defendant,
12 there must be mutual assent. Because Khedouri's testimony is not consistent with that of
13 Ginsburg, and because mutual assent may not be ascertained from the hidden intent of the
14 parties, the alleged oral agreement must be demonstrated through "objective manifestations
15 of assent by the parties." *Hill-Shafer*, 799 P.2d at 814. Summary judgment is appropriate,
16 Defendant contends, because all objective evidence shows that Defendant never assented to
17 a prior employment credit. Dkt. ##65 at 15, 72 at 12. Defendant is correct.

18 Shell's general policy was to not count prior employment periods where, as here,
19 there was a break in service of more than 30 days. Dkt. ##66 ¶ 53, 66-3 at 51. Khedouri's
20 attempt to negotiate a prior employment credit in May 2004 was rejected by Sherles.
21 Dkt. #66 ¶¶ 24-25. When Khedouri returned to work for Shell, he was provided a draft
22 employment agreement that calculated severance pay based on years of "continuous
23 employment" with Shell. Dkt. #66-2 at 33. Khedouri countered with a revised draft
24 agreement that deemed the continuous employment provision to include "all prior
25 employment for any entity affiliated with Shell[.]" Dkt. ##66 ¶ 23, 66-2 at 47. As reflected
26 in her notes dated May 19, 2004 (Dkt. #66-2 at 61-62), Sherles rejected that proposed
27 revision (*see* Dkt. #66 ¶ 24). One of the terms for discussion with Khedouri was what
28 "[s]everance was based on[.]" Dkt. #66-2 at 61. Sherles' handwritten notes state: "No credit

for prior employment" and "severance clause . . . not being changed." *Id.* at 61-62.

Having failed to agree on a formal employment agreement, the parties executed a memorandum of understanding on June 17, 2004. Dkt. #68-9. That document provides Khedouri with standard Shell benefits with the exception of additional vacation days. *Id.* at 3. The 2006 amendment to the memorandum of understanding provides new compensation terms, but does not change Khedouri's entitlement to standard benefits. Dkt. #68-10. Neither the 2004 memorandum of understanding nor the 2006 amendment provides Khedouri with a prior employment credit.

In September 2008, Defendant provided Khedouri with a new draft employment agreement. Dkt. #66 ¶ 39. The severance provision contained in that agreement, like the one proposed by Defendant in May 2004 (Dkt. #66-2 at 33), states that severance pay would be based on years of continuous employment. Dkt. #66-3 at 13. The agreement explicitly rejects a prior employment credit, stating that Khedouri's employment "shall be deemed to have commenced on May 1, 2004." *Id.*

On October 1, 2008, Khedouri and Sherles discussed terms of the proposed employment agreement. With respect to severance pay, Khedouri reminded Sherles of "original discussions that [he was] to be treated like no break in employment." Dkt. #68-35 at 2. Sherles stated, "I remember it your way." *Id.* Khedouri interpreted that statement as a "meeting of the minds" that resolved the severance issue. Dkt. #66-1 at 12-13, 19-20; Dkt. #63-1 at 47, ¶ 5. Sherles has testified that she merely recalled having previously discussed the severance issue with Khedouri, not that she agreed to his request for a prior employment credit. Dkt. #66-2 at 29.

Sherles' statement, "I remember it your way," cannot reasonably be construed as an assent to a prior employment credit. Sherles specifically asked Khedouri to send her an e-mail reminding her of what they previously had discussed regarding severance. Dkt. ##66-2 at 29, 68-36 at 4. The e-mail Khedouri sent did not address any prior discussions with Sherles (or Ginsburg), but instead provided contract language that his continuous employment with Shell "shall be deemed to be ten years." Dkt. #68-38 at 2.

Recalling "some type of agreement related to that concession," Sherles asked Ginsburg whether he had any notes, and he said no. Dkt. #68-19 at 2. Sherles thereafter sent Khedouri an e-mail stating that for severance purposes he was "deemed to have started when [he] most recently started and [does] not get credit for prior work periods." *Id.* at 4. Sherles explained that she had investigated the issue and found that Khedouri had been given additional vacation days "as a concession on this point[.]" *Id.* She explicitly instructed Khedouri not to revise the written employment agreement to include a prior employment credit. *Id.*

Plaintiffs have presented evidence showing that it was *Khedouri's* "understanding that [he] would receive credit for prior employment." Dkt. #66-1 at 19. Indeed, Khedouri has repeatedly testified that, *in his mind*, the parties agreed to the requested credit. *Id.* at 13, 19, 39; *see* Dkt. #67 at 6 n.2. The objective evidence, however, shows a lack of mutual assent. Sherles specifically rejected Khedouri's request for a prior employment credit in May 2004. The only written agreement entered into by the parties, the 2004 memorandum of understanding, as amended in 2006, does not provide a prior employment credit. Khedouri's attempt to negotiate a credit into the 2008 written agreement was rejected. That Defendant rejected the credit both in 2004 and 2008 is supported by the testimony of Khedouri's former partner, Joseph Malone. Dkt. #66-2 at 9. Malone was rehired with Khedouri and together they sought to negotiate the credit. Malone has testified that Sherles rejected the credit in 2004 and thereafter, and that he signed the 2008 employment agreement "explicitly knowing that [Defendant] had rejected our proposal regarding credit for prior employment with respect to severance." *Id.* at 10.

Plaintiffs bear the burden of showing a mutual assent to a prior employment credit. *See Tabler*, 47 P.3d at 1159. Plaintiffs must show that a "distinct intent common to both parties . . . exist[s] without doubt or difference[.]" *Hill-Shafer*, 799 P.2d at 814. "Any reasonable view of the evidence inevitably leads to the conclusion that there was no meeting of the minds and no enforceable contract was formed." *Id.* at 817. Defendant's summary judgment motion will be granted with respect to the claim for severance pay. *See* Dkt. #46 ¶ 21(c). Given this ruling, the Court need not address Defendant's argument that Khedouri's

1 affidavit testimony (Dkt. #68-1) is a mere sham to avoid summary judgment. *See* Dkt. #72
at 7-8.

### D. The Alleged Contract for Profit Bonus Compensation.

Plaintiffs seek to recover up to $80,000 in profit bonus compensation. Dkt. #46 ¶ 21(d). Khedouri admits that he would be entitled to such compensation only if Defendant had made a profit in 2008. Dkt. #66-1 at 104. Plaintiffs do not dispute that Defendant lost money in 2008. *Id.*; Dkt. ##66, 68 ¶¶ 63. Defendant's summary judgment motion will be granted with respect to the claim for profit bonus compensation.

### E. Breach of Contract Summary.

The Court will deny summary judgment with respect to the alleged breach of the oral contract for a $20,000 raise. *See* Dkt. #46 ¶ 21(a). The Court will grant summary judgment in favor of Defendant as to the remainder of the breach of contract claim. *See id.* ¶ 21(b)-(d).

## IV. Plaintiffs' Unpaid Wages Claim (Count Two).

Count two of the amended complaint asserts a state law claim for unpaid wages. Dkt. #46 ¶¶ 23-26. Defendant argues that this claim fails because Khedouri has no contractual right or reasonable expectation to the wages he seeks, namely, increased base compensation, 30 days' pay in lieu of notice, severance pay, and a profit bonus. Dkt. ##65 at 15-16, 72 at 9-10. Plaintiffs assert that Khedouri has a reasonable expectation to the unpaid wages based on the "validity of the various oral contracts between Khedouri and Shell[.]" Dkt. #67 at 12.

Because there are genuine issues of fact as to whether the parties agreed to a $20,000 raise, the Court will deny summary judgment on this aspect of count two. With respect to the other wages sought in count two – 30 days' pay in lieu of notice, severance pay, and a profit bonus – Plaintiffs have not demonstrated a triable issue as to whether Khedouri had a reasonable expectation, by way of contract or otherwise, to those wages.

Nor have Plaintiffs created a triable issue as to whether 30 days' pay in lieu of notice and severance pay are "standard" employee benefits. *See* Dkt. #67 at 12-13. As explained more fully above, Plaintiffs have presented evidence showing only that Glickstein's

1  "particular employment agreement" has a provision for 30 days' notice before termination.
2  *See* Dkt. #68 ¶ 83. Plaintiffs have presented evidence that severance provisions are standard
3  to most executive employment contracts (Dkt. #68-26 at 3), but the parties never entered a
4  contract containing such a provision. The Court will grant Defendant's summary judgment
5  motion to the extent count two seeks 30 days' pay in lieu of notice, severance pay, and a
6  profit bonus.

**V.     Defendant's Counterclaim.**

Following his first term of employment with Shell, Khedouri received three months' severance pay. Dkt. ##63, 70 ¶¶ 3. A dispute arose over the calculation of Khedouri's bonus compensation, and that dispute was resolved pursuant to the 2001 settlement agreement. *Id.* ¶¶ 4-5. The settlement agreement contains a covenant-not-to-sue:

> Shell and Employee further covenant and agree never to commence any action, suit or proceeding, in law or equity, or any other kind, against the other, in any way pertaining to or arising out of Employee's employment by and with Shell, or the termination of his employment. The parties also stipulate that the consideration received and to be received by Employee under this Agreement . . . is in full and complete satisfaction of any claims Employee may have, or may have had, arising out of his employment or termination of employment with Shell, whether known by the parties at the time of execution of this Agreement or not known, with the exception of claims arising out of this Agreement.

Dkt. ##63-1 at 38-39, 66-1 at 82.

Khedouri has breached his covenant not to sue, Defendant contends, because his claim for six months' severance pay pertains to and arises out of his prior employment with Shell. Dkt. ##53 ¶¶ 17-18, 65 at 16-17. The Court does not agree.

Plaintiffs have made clear that they are not suing Defendant for any failure to pay severance due directly from his employment with Shell between 1992 and 1999. Dkt. #62 at 6. Khedouri admits that he received full severance pay for those years. *Id.*; Dkt. #63 ¶ 3. Plaintiffs brought this suit to enforce a separate contract providing for a prior employment "credit." That contract allegedly was made between 2004 and 2008. Defendant does not assert that anything in the 2001 settlement agreement precluded the parties from negotiating a contract providing for a prior employment credit. Sheldon Ginsburg, the Shell executive

- 10 -

who signed the 2001 settlement agreement, has testified that the agreement does not cover claims based on future events. Dkt. #63-1 at 59.

Plaintiffs have demonstrated, as a matter of undisputed fact, that the breach of contract claim asserted in count one of the amended complaint does not constitute a breach of the 2001 settlement agreement. Summary judgment on the counterclaim will be granted in favor of Plaintiffs.

**IT IS ORDERED:**

1. Plaintiffs' motion for summary judgment on the counterclaim (Dkt. #62) is **granted**.

2. Defendant's motion for summary judgment (Dkt. #64) is **granted in part** and **denied in part**. The motion is denied with respect to the counterclaim and Plaintiffs' claims regarding a $20,000 raise. The motion is granted with respect to all other claims asserted by Plaintiffs.

3. The Court will set a final pretrial conference by separate order.

DATED this 9th day of February, 2010.

*David G. Campbell*
David G. Campbell
United States District Judge